No. 2022-2133

United States Court of Appeals
for the Federal Circuit

**United Therapeutics Corporation,**

*Appellant,*

**v.**

**Liquidia Technologies, Inc.,**

*Appellee,*

**KATHERINE K. VIDAL, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,**

*Intervenor,*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in IPR2020-00770

### Brief for Intervenor

THOMAS W. KRAUSE
Solicitor

FARHEENA Y. RASHEED
Deputy Solicitor

MAUREEN D. QUELER
MARY L. KELLY
Associate Solicitors

USPTO Office of the Solicitor
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

February 16, 2023          Attorneys for the Director of the USPTO

## RELEVANT REGULATORY PROVISIONS

37 C.F.R. § 42.5 - Conduct of the proceeding.

. . .

(b) The **Board** may waive or suspend a requirement of parts 1, 41, and 42 and may place conditions on the waiver or suspension.

. . .

37 C.F.R. § 42.53 - Taking testimony.

(a) *Form.* Uncompelled direct testimony must be submitted in the form of an affidavit. All other testimony, including testimony compelled under 35 U.S.C. 24, must be in the form of a deposition transcript. Parties may agree to video-recorded testimony, but may not submit such testimony without prior authorization of the Board. In addition, the Board may authorize or require live or video-recorded testimony.

. . .

## REPRESENTATIVE CLAIM 1

1. A pharmaceutical batch consisting of treprostinil or a salt thereof and impurities resulting from (a) alkylating a benzindene triol, (b) hydrolyzing the product of step (a) to form a solution comprising treprostinil, (c) contacting the solution comprising treprostinil from step (b) with a base to form a salt of treprostinil, (d) isolating the salt of treprostinil, and (e) optionally reacting the salt of treprostinil with an acid to form treprostinil, and wherein the pharmaceutical batch contains at least 2.9 g of treprostinil or its salt.

(Appx81, 17:24-18:2; Appx5-6.)

# TABLE OF CONTENTS

I.    Statement of the Issues ............................................................1

II.   Statement of the Case...............................................................2

      A.    Statutes and Regulations Concerning Direct Testimony in
            IPR Proceedings and Motions to Exclude......................................2

      B.    IPR Proceedings Concerning the Winkler Declaration .....................4

      C.    The Board's Denial of UTC's Motion to Exclude the Winkler
            Declaration .......................................................................7

III.  Summary of the Argument.....................................................10

IV.  Argument ..........................................................................12

      A.    Standard of Review...............................................................12

      B.    The Board Did Not Abuse Its Discretion by Considering the
            Winkler Declaration...............................................................12

            1.    The Board's Consideration of the Winkler Declaration
                 Was Not Based on an Erroneous Conclusion of Law ............12

                 a.    The Board Has the Authority to Waive the
                      Requirement in § 42.53 that Expert Testimony Be
                      in the Form of an Affidavit......................................13

                 b.    No Regulation or Statute Separately Requires
                      Attestation Language to Accompany an Expert
                      Declaration or Establishes that the Winkler
                      Declaration was Inadmissible ...................................14

            2.    The Board's Consideration of the Winkler Declaration
                 was Not Unreasonable in Light of the Lack of
                 Prejudice to UTC.............................................................17

V.    Conclusion.......................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Farm Lines v. Black Ball Freight Serv.*,
    397 U.S. 532 (1970) ........................................................................ 13, 20

*Apple Inc. v. Evolved Wireless LLC*,
    IPR2016-01229, 2017 WL 6209180 (P.T.A.B. Nov. 30, 2017) .................... 21

*Askeladden LLC v. Verify Smart Corp.*,
    IPR2017-00726, Paper 65 (P.T.A.B. July 23, 2018) ................................. 14

*Belden Inc. v. Berk-Tek LLC*,
    805 F.3d 1064 (Fed. Cir. 2015) ......................................................... 12, 13

*Chen v. Bouchard*,
    347 F.3d 1299 (Fed. Cir. 2003) .............................................................. 12

*Cuozzo Speed Techs., LLC v. Lee*,
    579 U.S. 261 (2016) ............................................................................. 16

*ERICSSON INC v. Intellectual Ventures I LLC*,
    IPR2014-01149, Paper 68 (P.T.A.B. Dec. 9, 2015) ................................. 14

*Fidelity Info. Servs., LLC v. Mirror Imaging, LLC*,
    CBM2017-00064, Paper 54 (P.T.A.B. Jan. 2, 2019) ................................. 18

*Genentech, Inc. v. Iancu*,
    809 F. App'x 781 (Fed. Cir. 2020) ...................................................... 13, 18

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
    527 F.3d 1318 (Fed. Cir. 2008) .............................................................. 15

*Google LLC v. CyWee Group Ltd.*,
    IPR2018-01257, 2019 WL 4247120 (P.T.A.B. Sept. 6, 2019) ...................... 18

*In re Google Tech. Holdings LLC*,
    980 F.3d 858 (Fed. Cir. 2020) ................................................................ 15

*Handi Quilter, Inc. v. Bernina Int'l AG*,
    IPR2013-00364, Paper 30 (P.T.A.B. Jun. 12, 2014) ................................... 4

*Int'l Bus. Machs. Corp. v. Intellectual Ventures II LLC*,
   IPR2015-01323, Paper 38 (Sept. 27, 2016) .................................................... 6

*In re Mehta*,
   347 F.2d 859 (C.C.P.A. 1965) ................................................................... 19

*Micron Tech., Inc. v. e.Digital Corp.*,
   IPR2015-00519, Paper 16 (P.T.A.B. Apr. 27, 2015) .................................. 14

*PAM S.p.A. v. United States*,
   463 F.3d 1345 (Fed. Cir. 2006) ................................................................. 20

*Redline Detection, LLC v. Star Envirotech, Inc.*,
   811 F.3d 435 (Fed. Cir. 2015) ................................................................... 13

*Swagway, LLC v. Int'l Trade Comm'n*,
   934 F.3d 1332 (Fed. Cir. 2019) ................................................................. 20

*United States v. L.A. Tucker Truck Lines*,
   344 U.S. 33 (1952) ................................................................................... 15

**Statutes**

5 U.S.C. § 706 .............................................................................................. 20

28 U.S.C. § 1746 ................................................................................... *passim*

35 U.S.C. § 23 .................................................................................... 3, 9, 17

35 U.S.C. § 25 ........................................................................................ *passim*

35 U.S.C. § 312 ...................................................................................... *passim*

35 U.S.C. § 312(a)(3) .......................................................................... 2, 3, 16

35 U.S.C. § 314(d) ....................................................................................... 16

**Regulations**

37 C.F.R. § 1.68 ..................................................................................... *passim*

37 C.F.R. § 42.2 ..................................................................................... *passim*

37 C.F.R. § 42.5 .............................................................................. 1, 10, 12, 13

37 C.F.R. § 42.53 ............................................................... *passim*

37 C.F.R. § 42.53(a) .................................................................. 3, 13

37 C.F.R. § 42.62 ...........................................................................4

37 C.F.R. § 42.63 ...........................................................................2

37 C.F.R. § 42.63(a) ....................................................................19

37 C.F.R. § 42.64 .....................................................................3, 14

37 C.F.R. § 42.64(b)(2) ....................................................... 4, 5, 8, 18

37 C.F.R. § 42.104 .........................................................................2

## STATEMENT OF RELATED CASES

The Director is not aware of any related cases in connection with the patent at issue (U.S. Patent No. 9,604,901) other than the matters noted in the Statement of Related Cases in Appellant's Opening Brief (ECF No. 32 at ix).

# I.    STATEMENT OF THE ISSUES

United Therapeutics Corporation ("UTC") appeals from the Board's final written decision in an inter partes review proceeding brought by Liquidia Technologies, Inc. ("Liquidia") that challenged the claims of UTC's U.S. Patent No. 9,604,901 ("the '901 patent"). Relevant to the Director's intervention is UTC's challenge to the Board's denial of its motion to exclude the expert declaration of Liquidia's expert, Dr. Winkler.

UTC filed a motion to exclude the Winkler declaration because it was unsworn and did not contain any of the affirmations of truthfulness required by the regulations governing the taking of testimony in IPR proceedings. *See* 37 C.F.R. §§ 42.53, 42.2, 1.68. While the Board agreed (i) that its rules require uncompelled direct testimony to be in the form of an affidavit, (ii) that affidavits are required to contain certain affirmations of truthfulness, and (iii) that the Winkler declaration did not comply with these rules, the Board did not exclude the declaration. Rather, because UTC was able to depose Dr. Winkler, the Board found that UTC was not prejudiced by his declaration and therefore did not exclude it. The Board also denied UTC's rehearing request on this issue, noting the Board's authority under 37 C.F.R. § 42.5 to waive a requirement of the rules and reiterating the lack of prejudice to UTC.

The issue that the Director will address in this appeal is whether the Board abused its discretion by not excluding the Winkler declaration. Because, as shown

below, the Board's decision was neither an erroneous conclusion of law nor unreasonable, the Court should affirm the Board's decision to consider the Winkler declaration.

## II.    STATEMENT OF THE CASE

This appeal concerns IPR proceedings brought by Liquidia against UTC's '901 patent (IPR2020-00770). In its final written decision, the Board denied UTC's motion to exclude the expert declaration relied on in Liquidia's petition. (Appx54-58.)[1] The Board further denied UTC's request for rehearing on the same issue. (Appx65-69.) The Director intervened in the appeal to defend the Board's decision denying UTC's motion to exclude.

### A.    Statutes and Regulations Concerning Direct Testimony in IPR Proceedings and Motions to Exclude

A petition in an IPR proceeding must identify and be accompanied by the evidence the petitioner seeks to rely on. *See* 35 U.S.C. § 312(a)(3); *see also* 37 C.F.R. § 42.104; *see also* Patent Trial and Appeal Board Consolidated Trial Practice Guide November 2019 at 3, https://www.uspto.gov/TrialPracticeGuideConsolidated (last accessed January 10, 2023) (hereinafter "2019 TPG"). The scope of evidence that may be submitted is broad, including "affidavits, transcripts of depositions, documents, and things." 37 C.F.R. § 42.63. A petition is often accompanied by

---

[1] Citations to the Joint Appendix are denoted as "Appx___." Citations to Qualcomm's Cross-Appellant Brief are denoted as "Cross-Appellant Br. at ___."

evidence in the form of expert testimony. *See* 35 U.S.C. § 312(a)(3)(B); *see also* 2019 TPG at 34-35.

The regulations governing IPR proceedings dictate that uncompelled direct testimony, such as expert testimony, must be submitted "in the form of an affidavit." 37 C.F.R. § 42.53(a) ("Taking testimony"); 2019 TPG at 34. The regulations further define an "affidavit" as containing either (1) an attestation of truthfulness and a warning that "willful false statements and the like are punishable by fine or imprisonment" under 37 C.F.R. § 1.68 ("Declaration in lieu of oath"), or (2) an attestation "under penalty of perjury" that the contents of the affidavit are true and correct under 28 U.S.C. § 1746 ("Unsworn declarations under penalty of perjury"). 37 C.F.R. § 42.2 (defining "affidavit"). These rules are consistent with the Director's statutory power to establish rules for "taking affidavits and depositions" in USPTO proceedings (35 U.S.C. § 23) and consistent with the power to establish rules allowing any document that is required to be under oath to be submitted in the form of a written declaration with the warning that "willful false statements and the like are punishable by fine or imprisonment, or both" (35 U.S.C. § 25).

If a party believes that the evidence submitted during an IPR proceeding does not comply with the governing regulations or the Federal Rules of Evidence ("FRE"), that party must first timely object to the evidence and then file a motion to exclude to preserve the objection. *See* 37 C.F.R. § 42.64 (setting forth the procedures

3

for objecting to evidence and filing motions to exclude); 37 C.F.R. § 42.62 (stating that the FRE are applicable to IPR proceedings); 2019 TPG at 78-79. The rules provide for the service of supplemental evidence in response to an objection within ten business days. 37 C.F.R. § 42.64(b)(2). The purpose of such supplemental evidence is to support the admissibility of previously filed evidence. *See generally Handi Quilter, Inc. v. Bernina Int'l AG*, Case IPR2013-00364, Paper 30 at 2-3 (P.T.A.B. Jun. 12, 2014) (observing that USPTO procedures allows the party relying on evidence to which an objection is timely served the opportunity to overcome the objection).

## B.    IPR Proceedings Concerning the Winkler Declaration

Liquidia's petition for an IPR was accompanied by the declaration of Dr. Jeffrey D. Winkler, submitted as Exhibit 1002. (Appx91; Appx94; Appx877.) The Winkler declaration contained a signature (Appx960), but did not contain any affirmations of truthfulness or any acknowledgement of the punishment for false statements. (*See generally* Appx877-960.) In its preliminary response, UTC did not assert that the attestation deficiencies in the Winkler declaration were a basis to deny institution of Liquidia's petition. (*See e.g.,* Appx223-224.) The Board subsequently instituted the IPR proceeding against all of the challenged claims of the '901 patent. (*See* Appx300.)

Following institution, UTC timely served objections to the Winkler

4

declaration. (Appx329-332.) UTC objected to the Winkler declaration as, *inter alia*, "hearsay without exception" and "lacking authentication and not self-authenticating because it lacks sufficient indicia that the exhibit is what it purports to be." (Appx331.) UTC's objections did not cite any regulations or statutes concerning affidavit requirements. (*See* Appx331.) Liquidia did not serve any timely supplemental evidence in response to UTC's objection to the Winkler declaration. (*See* Appx589); 37 C.F.R. § 42.64(b)(2).

Prior to filing its Patent Owner response, UTC deposed Dr. Winkler on his declaration. (Appx11996.) During the deposition, Dr. Winkler confirmed that he had written the declaration and that the declaration contained his signature. (Appx12013 at 18:11-13; Appx12014 at 19:12-21.) UTC then argued in its Patent Owner Response that the Winkler declaration was entitled to no weight because it "lack[ed] the required oath or perjury statement." (Appx373.) Liquidia asserted in reply that "[a]ny omissions in Dr. Winkler's declaration with respect to the oath or perjury statement were harmless and have been cured." (Appx449-450.) In particular, Liquidia argued that UTC deposed Dr. Winkler on his opinions and, moreover, that a "modified declaration," filed with the Reply as Exhibit 1039, included the required certifications. (Appx449-450.) In its Sur-Reply, UTC maintained its arguments that the Winkler declaration should be given no weight, and further asserted that the "new declaration at the Reply stage" did not cure any deficiencies in the original Winkler

Declaration. (Appx553.)

Prior to the oral argument, UTC timely filed a motion to exclude the Winkler declaration because it "purports to be a declaration, but without authentication because it lacks the statutorily-required oath or caveat for a declaration." (Appx590 (citing 35 U.S.C. §25 and 37 C.F.R. §42.2).) UTC asserted that statements lacking the required certifications "forgo the guarantee of truthfulness imparted by a declarant's acknowledgment of the possible consequences—fine, imprisonment, or penalty of perjury." (Appx590 (citing *Int'l Bus. Machs. Corp. v. Intellectual Ventures II LLC*, IPR2015-01323, Paper 38 at 9-11 (P.T.A.B. Sept. 27, 2016)).) UTC further moved to exclude the Winkler declaration as hearsay without exception. (Appx590-591.)

Liquidia opposed the motion to exclude, asserting that UTC waived its argument regarding the missing oath because UTC only generically asserted a lack of authenticity. (Appx602.) Waiver aside, Liquidia maintained its assertions that the deposition and refiled declaration rendered the "inadvertently omitted" affirmations of truthfulness harmless and otherwise cured. (Appx603.) UTC's reply denied any waiver because its objections were clear as to the defects in the Winkler declaration. (Appx639.) With respect to the modified declaration, UTC replied that Liquidia had never received Board authorization to file belated supplemental evidence. (Appx640.)

6

During oral argument, Liquidia explained that the missing language in the Winkler declaration was the result of a paragraph being accidentally deleted during drafting and not an intentional omission. Liquidia also emphasized the lack of prejudice to UTC, given that UTC had conducted a several-hour deposition of Dr. Winkler and had filed a corrected declaration. (Appx715 at 20:7-17.) A panel member explained, however, that the corrected declaration did not follow Board rules for supplemental evidence. (Appx718-719 at 23:22-24:15.) When questioned as to whether the ability to depose Dr. Winkler cured the authenticity issues, UTC's counsel did not directly answer the question, but rather emphasized the need for parties to follow the rules and the need for an oath for a declaration to be immune from a charge of hearsay. (Appx758-759 at 63:12-64:19.) UTC's counsel then stated that he would be "hard pressed to sit here and say, you know, that we suffered a specific cognizable prejudice." (Appx759 at 64:5-6.)

### C.    The Board's Denial of UTC's Motion to Exclude the Winkler Declaration

At the conclusion of the IPR proceedings, the Board issued a final written decision finding that Liquidia had established by a preponderance of evidence that claims 1-5, 8 and 9 were unpatentable, but had not demonstrated the unpatentability of claims 6 or 7. (Appx63.) The Board's unpatentability decision relied, at least in part, on the Winkler declaration. (*See e.g.,* Appx36-38; Appx42.)

In its final written decision, the Board also denied UTC's motion to exclude

7

the Winkler declaration. (Appx53-58.) The Board rejected Liquidia's arguments of waiver and curing via the modified Winkler declaration, but agreed with Liquidia that UTC's opportunity to depose Dr. Winkler cured any deficiency. (Appx54-58.) As to waiver, the Board found UTC's authentication objection to be particular enough because only two things would render a declaration unauthentic—the lack of a signature or the lack of an oath. (Appx56.) Liquidia's failure to realize the oath was missing did not mean UTC's objection was insufficient. (Appx56.) With respect to the modified declaration (Exhibit 1039), the Board gave it no weight as supplemental evidence because it was not filed within ten business days of UTC's objection, as required under 37 C.F.R. § 42.64(b)(2). (Appx56-57.)

While the Board agreed with UTC that the regulations require that uncompelled direct testimony to be in the form of an affidavit (37 C.F.R. §§ 42.2, 42.53), that an affidavit must comply with 37 C.F.R. § 1.68 or 28 U.S.C. § 1746, and that the Winkler declaration (Exhibit 1002) did not comply with these regulations because it did not contain any affirmations of truthfulness or reference the penalty for false statements, the Board nevertheless found that UTC did not suffer any prejudice from the defective Winkler declaration because UTC was able to depose Dr. Winkler on his opinions. (Appx54; Appx58.) The Board specifically noted that UTC's counsel had acknowledged that UTC had suffered no cognizable prejudice. (Appx58 (citing Appx759 at 64:5-6).)

8

Following the Board's final written decision, UTC concurrently filed a request for rehearing and a request for Precedential Opinion Panel ("POP") review on the issue of the Winkler declaration. (Appx13111; Appx783-790; Appx792.) The POP request asserted that the Board's decision was contrary to 28 U.S.C. § 1746 and 35 U.S.C. §§ 23, 25. (Appx13111.) The POP request was denied and the issue was passed to the panel for consideration of the rehearing request. (Appx794-795.) UTC's rehearing request asserted that the final written decision improperly relied on statements in the Winkler declaration, which was not a proper affidavit under the rules. (Appx785-786.) UTC also asserted that the Board had no power to waive the "sworn-testimony requirement" (citing 35 U.S.C. §§ 23, 25), and that neither the statutes nor the rules contain a "no prejudice exception" that would allow for admission of the Winkler declaration. (Appx788-789.) UTC argued that the Board therefore lacked any discretion to allow unsworn statements into the IPR proceedings. (Appx789.)

The Board denied UTC's rehearing request. (Appx65-69.) The Board found that UTC's request did not identify anything overlooked or misapprehended, but rather just expressed a disagreement with the Board's conclusion, which did not meet the standard for a rehearing request. (Appx66-68.) The Board also reiterated that UTC had deposed Dr. Winkler, curing any authentication issues with the declaration. (Appx68.) The Board further included a footnote noting its ability under

37 C.F.R. § 42.5 to waive the requirements of part 42 of the rules, including the requirement under 37 C.F.R. § 42.53 that uncompelled direct testimony be in the form of an affidavit. (Appx67, n.1.)

## III.    SUMMARY OF THE ARGUMENT

The Board's consideration of the Winkler declaration was not an abuse of discretion because it was neither based on an erroneous conclusion of law nor unreasonable.

The Board's denial of UTC's motion to exclude the Winkler declaration was not an error of law but rather was consistent with the Board's authority under 37 C.F.R. § 42.5 to waive its procedural rules. Here, the Board waived the requirement under § 42.53 that uncompelled direct testimony in an IPR proceeding be in the form of an affidavit. As a result of that waiver, the regulatory and statutory requirements for the proper attestation language in an affidavit no longer applied to the Winkler declaration. *See e.g.,* 28 U.S.C. § 1746 and 35 U.S.C. § 25. Notably, UTC's brief to this Court does not mention this waiver or dispute that the Board has the authority to waive its own procedural rules. The Board's waiver of the affidavit requirement for expert testimony was therefore not based on any erroneous conclusion of law.

Other than § 42.53, UTC does not identify any regulation or statute requiring expert testimony to be in the form of an affidavit. Although UTC now asserts that 35 U.S.C. § 312 has such a requirement, it forfeited this argument by not raising it

10

before the Board. Additionally, § 312 lays out what an IPR petition must *cite*, but does not limit the *form of admissible evidence* in an IPR proceeding. And even if a statute cited by UTC required certain affirmations of truthfulness in expert declarations, none dictates the consequences of omissions on this score, let alone requires the type of mechanical exclusion of non-compliant declarations that UTC advocates. UTC therefore fails to establish that the Winkler declaration was inadmissible or that the Board's consideration of it was an error of law.

The Board's decision to waive its procedural rules to prevent a formalistic exclusion of relevant information was also reasonable. UTC deposed Dr. Winkler on his opinions at length and filed arguments and evidence in response to Dr. Winkler's declaration. Dr. Winkler confirmed the authenticity of the declaration at his deposition and UTC's counsel admitted to no "specific cognizable prejudice" suffered by UTC as a result of the declaration. Thus, it was not unreasonable for the Board to consider Dr. Winkler's declaration, which was valuable to the Board's decision-making process and did not prejudice UTC. Indeed, the Board could just as easily have waived the timing requirements for supplemental evidence and admitted the replacement Winkler declaration, thereby reaching the same result. IPR proceedings are intended to encompass a broad scope of different types of evidence and the Board did not abuse its discretion in giving the Winkler declaration the weight it felt appropriate in light of the lack of prejudice to UTC.

# IV.   ARGUMENT

## A.   Standard of Review

The Board's evidentiary rulings are reviewed for abuse of discretion, and will not be disturbed unless the decision "(1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) follows from a record that contains no evidence on which the Board could rationally base its decision." *Chen v. Bouchard*, 347 F.3d 1299, 1307 (Fed. Cir. 2003); *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1078 (Fed. Cir. 2015).

## B.   The Board Did Not Abuse Its Discretion by Considering the Winkler Declaration

### 1.   The Board's Consideration of the Winkler Declaration Was Not Based on an Erroneous Conclusion of Law

The Board's denial of UTC's motion to exclude the Winkler declaration was not an abuse of discretion as it was not based on an erroneous conclusion of law. The Board's decision to waive the affidavit requirements of 37 C.F.R. § 42.53 and consider the Winkler declaration was consistent with its ability to waive procedural rules under § 42.5. And because no statute requires expert declarations in IPR proceedings to be in the form of an affidavit or requires exclusion of non-compliant declarations, the Board's consideration of the Winkler declaration was not contrary to any law.

### a.    The Board Has the Authority to Waive the Requirement in § 42.53 that Expert Testimony Be in the Form of an Affidavit

As this Court has recognized, the Board has discretion under 37 C.F.R. § 42.5 to waive any requirement of part 42 of the Code of Federal Regulations. *See e.g., Belden Inc.*, 805 F.3d at 1081; *see also Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 443 (Fed. Cir. 2015); *see also Genentech, Inc. v. Iancu*, 809 F. App'x 781, 786 (Fed. Cir. 2020). Here, the Board waived the requirement in 37 C.F.R. § 42.53(a) that uncompelled direct testimony be in the form of an affidavit. (Appx67, n.1.) The Board's waiver of § 42.53 for the Winkler declaration thereby dispensed with all of the conditions normally required for a proper affidavit, which flow directly from § 42.53. In other words, it was no longer necessary for the Winkler declaration to comply with the definition of "affidavit" in 37 C.F.R. § 42.2, which includes containing the attestation language set forth in 37 C.F.R. § 1.68 and 28 U.S.C. § 1746 for affidavits.

Notably, UTC fails to address the Board's power to waive its procedural rules or challenge the Board's ability to do so in this case. In any event, the Board's use of its discretion to waive its procedural requirements was consistent with well-established principles of administrative law. *See Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 539 (1970) ("it is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the

orderly transaction of business") (cleaned up). It is also consistent with previous Board decisions waiving the procedural requirements of its own rules. *See ERICSSON INC v. Intellectual Ventures I LLC*, IPR2014-01149, Paper 68 at 9 (P.T.A.B. Dec. 9, 2015) (waiving requirement to timely serve objections to evidence under § 42.64); *see also Micron Tech., Inc. v. e.Digital Corp.*, IPR2015-00519, Paper 16 (P.T.A.B. Apr. 27, 2015) (waiving service requirements of §§ 42.105, 42.205); *see also Askeladden LLC v. Verify Smart Corp.*, IPR2017-00726, Paper 65 at 33 (P.T.A.B. July 23, 2018) (waiving page-limit requirement under §42.5(b)).

### b.    No Regulation or Statute Separately Requires Attestation Language to Accompany an Expert Declaration or Establishes that the Winkler Declaration was Inadmissible

Apart from 37 C.F.R. § 42.53, which the Board waived, no other regulation or statute requires expert testimony in an IPR proceeding to be in the form of an affidavit. Rather, each of the regulations and statutes cited by UTC that set forth the attestation language necessary for a compliant affidavit hinge on *another* law or regulation requiring the document at issue to be under oath or in the form of an affidavit. 37 C.F.R. § 1.68; 28 U.S.C. § 1746; 35 U.S.C. § 25. These statutes do not independently impose any requirements on the form of expert testimony in an IPR proceeding. Thus, once the Board waived § 42.53, the requirements in these statutes were no longer triggered. Accordingly, UTC is incorrect that these statutes require

14

expert testimony to have certain attestations in order to be admissible. (Br. at 10, 14, 18.)

On appeal to this Court, UTC asserts for the first time that 35 U.S.C. § 312 requires expert opinions to be in the form of an affidavit. (Br. at 27.) UTC, however, forfeited this argument by failing to raise a § 312-based argument before the Board. To preserve an issue for appeal to this Court, it is well settled that a party must first raise the issue to the agency. *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) ("We have regularly stated and applied the important principle that a position not presented in the tribunal under review will not be considered on appeal in the absence of exceptional circumstances."). UTC was provided a full opportunity to raise its arguments to the Board and raised a host of other regulations and statutes in support of its argument for the exclusion of the Winkler declaration. (*See e.g.* Appx373; Appx590; Appx785; Appx13111.) Here, UTC never raised § 312 before the Board, thereby forfeiting that argument now. *See Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1323 (Fed. Cir. 2008) (finding waiver when the waived issue was the exact subject of the summary judgment proceedings); *see also United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37 (1952) ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the

administrative body not only has erred but has erred against objection made at the time appropriate under its practice.").

Forfeiture aside, UTC's argument also lacks merit. Section 312 details what evidence a petition must *cite*, and is not directed to limiting the *form of admissible evidence*. In particular, § 312(a)(3)(B) states that a petition must identify "in writing and with particularity" the supporting evidence, including "affidavits or declarations of supporting evidence and opinions, if the petitioner relies on expert opinions." This language reflects the natural assumption that expert opinions are in the form of affidavits or declarations, but does not preclude expert declarations from being in other forms. Furthermore, UTC's challenge to the Board's final decision under § 312 is nothing more than a challenge to the sufficiency of the petition relied on by the Board in instituting, a challenge foreclosed by the Supreme Court in *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 276 (2016). *See* 35 U.S.C. § 314(d).

Accordingly, UTC fails to establish that the Winkler declaration was inadmissible or that the Board's consideration of the Winkler declaration following waiver of § 42.53 was contrary to any prevailing regulation or statute and therefore erroneous.[2] Additionally, even if a statute cited by UTC could be read as requiring

---

[2] While UTC's motion to exclude before the Board asserted that the Winkler declaration was inadmissible as it lacked authentication and was hearsay (Appx589-591), UTC does not appear to have maintained these arguments on appeal. Additionally, at minimum, the deposition of Dr. Winkler cured any authentication concerns. (*See* Appx12011; Appx12014; Appx758-759 at 63:12-64:19.)

expert testimony to contain certain attestations, nothing in any statute or regulation compels any particular consequence if such attestations are omitted. 37 C.F.R. § 1.68; 28 U.S.C. § 1746; 35 U.S.C. §§ 23, 25, 312. UTC's claim that the Board was legally required to exclude the Winkler declaration turns on a wholly absent dictate mandating that the Board strike a non-compliant declaration, no matter how little sense exclusion made in the circumstances of the case. But the statutory and regulatory regime sensibly leaves to the Board's discretion whether to consider a non-compliant declaration and what weight to give that declaration in light of the particular record before it. As discussed below, it was reasonable for the Board to consider and rely on the Winkler declaration given the lack of prejudice to UTC and the value of the declaration in aiding the Board's decision making.

### 2. The Board's Consideration of the Winkler Declaration was Not Unreasonable in Light of the Lack of Prejudice to UTC

The Board's denial of UTC's motion to exclude the Winkler declaration was not an abuse of discretion as it was not unreasonable. The Board properly considered the prejudice to UTC if the declaration was submitted and correctly found that none existed. (Appx58; Appx68.) As the Board observed, UTC deposed Dr. Winkler under oath regarding the opinions in his declaration. (Appx58; Appx68; *see* Appx12013 at 18:11-13 and Appx12014 at 19:12-21 (Dr. Winkler confirming that he wrote the declaration and that it contained his signature).) UTC also responded in detail to Dr. Winkler's opinions in its Preliminary Response, Patent Owner

Response, Sur-Reply, and in an expert declaration. (*See e.g.*, Appx235, Appx368-369, Appx393, Appx528-529; Appx3514-3515.) And as the Board noted, UTC also admitted that it was able to "rigorously" depose Dr. Winkler and that UTC suffered no "cognizable prejudice" as a result of the declaration. (Appx758-759 at 63:5-64:19.) In the absence of prejudice to UTC, it was not an abuse of discretion for the Board to waive its procedural rules and consider the Winkler declaration. *See Genentech, Inc.*, 809 F. App'x at 786 (finding the Board did not abuse its discretion by waiving requirements that would preclude partial adverse judgments in the absence of any prejudice to the opposing party).

Additionally, the Board could have equally waived the timing requirements for supplemental evidence in 37 C.F.R. § 42.64(b)(2), to achieve the same result. *See* Appx57 (declining to consider the replacement Winkler declaration as it was not filed within 10 days of service of objections). The Board has previously taken this alternative route for admitting corrected declarations where the objector had deposed the declarant and responded to the substance of the declaration. *See, e.g.*, *Google LLC v. CyWee Group Ltd.*, IPR2018-01257, 2019 WL 4247120, Paper 69 at *2 (P.T.A.B. Sept. 6, 2019); *see also Fidelity Info. Servs., LLC v. Mirror Imaging, LLC,* CBM2017-00064, Paper 54 at 7-8 (P.T.A.B. Jan. 2, 2019). The availability of this alternative approach highlights that UTC has not suffered any prejudice as a result of the Board's actions.

In addition to the absence of prejudice to UTC, it was also reasonable for the Board to consider the Winkler declaration as part of the wide array of evidence allowed in an IPR proceeding. *See* 37 C.F.R. § 42.63(a) (broadly defining evidence as "affidavits, transcripts of depositions, documents, and things"). To the extent that the Board, as the decision maker, found the Winkler declaration helpful, non-prejudicial, and authentic, it was not unreasonable for the Board to waive its affidavit requirements and consider it. (*See* Appx36-38 (relying on the Winkler declaration in the Board's final written decision); *see also* Appx758 at 63:12-18 (noting that the deposition likely cured the lack of authentication).) UTC's reliance on *In re Mehta*, 347 F.2d 859, 866 (C.C.P.A. 1965), is also unavailing as the decision concerns a different type of proceeding (i.e., an ex parte appeal), does not address the IPR rules governing this case, and concerns the reliability of evidence in a proceeding without deposition practice. Moreover, the court in *Mehta* still reviewed and found portions of the declaration at issue in that case persuasive. *Id*.

UTC's opening brief does not dispute that its ability to depose Dr. Winkler cured any authentication concerns as a factual or equitable matter. Instead, UTC argues that the Board's reliance on a "no-prejudice standard" to allow the consideration of inadmissible evidence has no basis in the law. (Br. at 31-32.) UTC is incorrect for at least two reasons. First, as detailed above, once the Board waived the requirements of § 42.53, no further barriers existed to the admissibility of the

Winkler declaration. *See supra* IV.B.1. The Board therefore did not consider *inadmissible* evidence, as UTC asserts. (*See* Br. at 31-32.) Second, contrary to UTC's arguments, the law and prevailing precedent specifically provide that prejudice is considered when reviewing agency action. The language of 5 U.S.C. § 706 expressly states that the rule of prejudicial error is accounted for in deciding whether there was an abuse of discretion. *Swagway, LLC v. Int'l Trade Comm'n,* 934 F.3d 1332, 1343 (Fed. Cir. 2019). And this Court's precedent clearly establishes that substantial prejudice must be shown to overturn an agency's waiver of its own regulations when those regulations are merely procedural. *See PAM S.p.A. v. United States*, 463 F.3d 1345, 1348 (Fed. Cir. 2006) (citing *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532 (1970)).

Despite contesting that prejudice is even a factor, UTC now asserts that "the prejudice to UTC is now clear—the Board *actually relied on* the inadmissible Winkler Declaration… ." (Br. at 33.) These assertions of prejudice, however, have nothing to do with the *admissibility* of the Winkler declaration or any actual concerns regarding the truthfulness or authentication of the testimony therein. As discussed above, UTC was able to probe the credibility of Dr. Winkler during his deposition and availed itself of multiple opportunities to respond to the substance of his testimony.

Finally, while in previous cases the Board has given little weight to expert declarations that lacked the language required of affidavits (*see* Br. at 29), in none of those cases was the declarant deposed on the subject of their declaration testimony. *See e.g.*, *Apple Inc. v. Evolved Wireless LLC*, No. IPR2016-01229, 2017 WL 6209180, at *3-4 (P.T.A.B. Nov. 30, 2017) (noting that expert was not deposed and therefore the Board could not speculate as to whether he would swear to the statements in his declaration). Here, UTC's admittedly "rigorous" deposition of Dr. Winkler resolved the truthfulness concerns present in the previous cases where the Board failed to give weight to unsworn declarations. Finally, UTC's reliance on district court decisions (Br. at 30, n.5) is immaterial given the different posture and rules governing those proceedings.

## V.    CONCLUSION

Because the Board did not abuse its discretion in considering the Winkler declaration, this Court should affirm the Board's denial of UTC's motion to exclude.

Dated: February 16, 2023                Respectfully submitted,

                                        /s/ *Maureen D. Queler*
                                        THOMAS W. KRAUSE
                                        SOLICITOR

                                        FARHEENA Y. RASHEED
                                        DEPUTY SOLICITOR

                                        MAUREEN D. QUELER
                                        MARY L. KELLY
                                        ASSOCIATE SOLICITORS

                                        Office of the Solicitor
                                        U.S. Patent and Trademark Office
                                        Mail Stop 8, P.O. Box 1450
                                        Alexandria, Virginia 22313
                                        (571) 272-9035

                                        *Attorneys for the Director of the United*
                                        *States Patent and Trademark Office*